UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Valarie J. Corrigan,

         Plaintiff,

  v.

Commissioner of Social Security,[1]

         Defendant.

**Decision and Order**

17-CV-417 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. Nos. 7, 7-1, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 10, 13.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Supplemental Security Income under Title XVI of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as

---

[1] The Clerk of the Court is directed to conform the caption of the case to the caption of this decision.

"'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that her impairments prevent her from returning to her previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing her past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing her past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing her past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e).

3

The ALJ must then determine the individual's ability to return to her past relevant work given her residual functional capacity. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Here, plaintiff has argued that the ALJ "failed to include and consider evidence directly related to Plaintiff's impairments of Diabetes with Neuropathy, degenerative disorders, incontinence and chronic pain at Step Two, (and subsequent sequential steps), and therefore, failed to consider listings or combined limiting effects." (Dkt. No. 10-1 at 16; *see also* Dkt. No. 15 at 1.) The ALJ did include plaintiff's diabetic neuropathy and chronic pain in her decision. [20.] The problem, however, is how the ALJ handled the issue of diabetic neuropathy. The ALJ addressed diabetic neuropathy in one sentence, stating that "the record contains no confirmatory EMG or nerve conduction study." [20.] Through that single sentence, the ALJ implied that she could not consider diabetic neuropathy as a possible severe impairment without an EMG or nerve conduction study. That implication is error. For the analogous testing of electroencephalography ("EEG"), the Commissioner will review any test results in the medical records but does not require them. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 11.00(H)(5). When considering a possible diagnosis of amyotrophic lateral sclerosis, the Commissioner does not require nerve conduction studies. *See id.* Listing 11.00P ("Electrophysiological studies, such as nerve conduction velocity studies and electromyography (EMG), may support your diagnosis of ALS; however, we will not purchase these studies."). Other conditions do not appear to require EMG results either. *Cf. Prater v. Astrue*, No. 4:11CV399 CDP, 2012 WL 447386, at *9 (E.D. Mo. Feb. 13, 2012) ("Yet, there is no evidence in the record to suggest that positive EMG results are required for a diagnosis of carpal tunnel syndrome."). The Court thus concludes that the ALJ should not have dismissed the possibility of diabetic neuropathy for the sole reason of an absence of EMG or nerve conduction studies, especially where the ALJ failed to find that a doctor recommended such a study at some point and

4

that plaintiff refused. *Cf. Alvarez v. Comm'r*, No. 14-CV-12429, 2015 WL 3932543, at *8 (E.D. Mich. June 26, 2015) ("The Court is not persuaded by the Commissioner's argument that the record 'contains no concrete evidence of dysfunction of a nerve, such as nerve conduction testing or electromyography' (Doc. # 14 at 20), as there is no indication in the Listing [11.14] that such test results are required, and the Commissioner has cited no authority for such a proposition."); *see also Wright v. Colvin*, No. 6:13-CV-06585 MAT, 2015 WL 4600287, at *4 (W.D.N.Y. July 29, 2015) ("However, the ALJ relied on this gap in the administrative record to demonstrate support for his rejection of Plaintiff's subjective complaints that were consistent with diabetic neuropathy. The Court notes that this gap in the record was not attributable to, *e.g.*, Plaintiff's refusal to have such tests performed. Given that the ALJ gave 'great' weight to the remainder of Dr. Malaret's opinion, this error was significant and calls for the case to be remanded."). At the same time, even if plaintiff had nerve conduction tests in her records that confirmed the presence of peripheral neuropathy, those test results would not translate directly into specific RFC limitations. *Cf. Bell v. Colvin*, No. CV-12-08179-PCT-NVW, 2013 WL 1410548, at *5 (D. Ariz. Apr. 8, 2013) ("Without further explanation, the ALJ was not required to assume that a diagnosis of peripheral neuropathy precluded any walking or standing."). That nerve conduction tests are neither required nor determinative underscores the ALJ's need to review the administrative record for other evidence of diabetic neuropathy, such as the clinical note dated January 6, 2014 that contains the notation, "NEUROLOGIC: No change in sensation or paresthesias." [522.]

The issue of diabetic neuropathy suffices to require remand for further consideration. The Court takes no opinion as to what the ultimate outcome of that further consideration should be. The Court also will not consider at this time the other issues that plaintiff has raised. Upon remand, the Commissioner is free to consider plaintiff's other issues as might be appropriate.

5

## III. CONCLUSION

For the above reasons, the Court denies the Commissioner's motion (Dkt. No. 13). The Court grants plaintiff's cross-motion (Dkt. No. 10) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order. The Court denies plaintiff's cross-motion to the extent that it seeks any other relief.

The Clerk of the Court is directed to close the case.

SO ORDERED.

                                                  __/s Hugh B. Scott_____
                                                  Hon. Hugh B. Scott
                                                  United States Magistrate Judge

DATED: March 21, 2019